NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 7 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CENTRAL FREIGHT LINES, INC., a Texas corporation,<br><br>Plaintiff-Appellee,<br><br>v.<br><br>AMAZON FULFILLMENT SERVICES, a Delaware corporation,<br><br>Defendant-Appellant. | No.   20-35263<br><br>D.C. No. 2:17-cv-00814-JLR<br><br>MEMORANDUM[*] |
| CENTRAL FREIGHT LINES, INC., a Texas corporation,<br><br>Plaintiff-Appellant,<br><br>v.<br><br>AMAZON FULFILLMENT SERVICES, a Delaware corporation,<br><br>Defendant-Appellee. | No.   20-35276<br><br>D.C. No. 2:17-cv-00814-JLR |

Appeal from the United States District Court
for the Western District of Washington
James L. Robart, District Judge, Presiding

Argued and Submitted June 11, 2021

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Seattle, Washington

Before: GOULD, CLIFTON, and MILLER, Circuit Judges.

In this diversity action, Amazon Fulfillment Services appeals aspects of the district court's summary-judgment order in favor of plaintiff Central Freight Lines, Inc.; a jury verdict also in favor of Central Freight; and post-trial orders denying Amazon's motions for judgment as a matter of law or for a new trial and awarding Central Freight prejudgment interest. Central Freight cross-appeals the district court's selection of the accrual date for the prejudgment interest award and its denial of Central Freight's request for attorney's fees. We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part, reverse in part, vacate in part, and remand for further proceedings.

1.      Reviewing the district court's grant of summary judgment de novo, *see Hrdlicka v. Reniff*, 631 F.3d 1044, 1048 (9th Cir. 2011), we conclude that the district court erred when it ruled that there was no genuine dispute of material fact that the parties orally modified their agreement on January 16, 2014 to allow Central Freight to charge its "spot quote" rates for certain shipments without Amazon's preapproval. To form a contract, the parties must "mutual[ly] assent to the same bargain at the same time." *Burnett v. Pagliacci Pizza, Inc.*, 470 P.3d 486, 491 (Wash. 2020) (quoting *Yakima Cnty. (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 858 P.2d 245, 255 (Wash. 1993)). The district court primarily

2

relied on three categories of evidence, but when the evidence is viewed in the light most favorable to Amazon, *see Hrdlicka*, 631 F.3d at 1048, genuine issues of fact remain as to whether the parties modified their agreement on January 16, 2014 and whether they shared an understanding of its terms.

First, the district court referenced a January 2014 email exchange in which Central Freight executive Tom Botsios described his belief that Central Freight and Amazon had reached a similar oral modification in 2011. The district court took Amazon employee Christian Piller's response—that the parties should "get an addendum to the contract to include this agreement"—as an unambiguous manifestation of assent to the modification on that date.

A jury, however, could reasonably have found otherwise. Before Botsios sent the addendum, Piller cautioned that he would "have [Amazon] Legal review once [Botsios] sen[t] the document," adding that "there may be some standard back-and-forth." After Botsios sent the addendum, Piller again noted that he would "discuss with Legal and follow up." The next month, in response to an email from an Amazon employee regarding a shipment involving Central Freight, Piller stated that the addendum had "not [been] executed by Amazon, only sent to Amazon for review." The fact that Amazon never signed the addendum is material evidence that it did not assent to a separate, contemporaneous modification. *See Roethemeyer v. Milton*, 33 P.2d 99, 101–02 (Wash. 1934) ("The failure to reject an

3

offer is not equivalent to assent" because "[s]ilence is not assent, unless there is a duty to speak.").

Second, the district court relied on Piller's deposition testimony in which he said that he "told Tom [Botsios] to spot quote eight-pallet-plus shipments." The district court took this and similar testimony as an admission that the parties had agreed to the modification. But as Central Freight concedes, the term "spot quote" is susceptible to two meanings. In normal industry parlance, a spot quote is an ad hoc offer by a carrier that a shipper may accept, reject, or further negotiate. But here, Central Freight says the parties used the term to mean a rate generated by CFL's "spot quote computer pricing program" that Amazon could not later contest.

A jury could reasonably interpret Piller's testimony and communications as intending to convey the industry-standard meaning, such that he was merely inviting Central Freight to make future offers rather than agreeing to modify the agreement's pricing structure. *See Donatelli v. D.R. Strong Consulting Eng'rs, Inc.*, 312 P.3d 620, 624 (Wash. 2013) ("Contract interpretation is normally a question of fact for the fact-finder." (quoting *Spradlin Rock Prods., Inc. v. Public Util. Dist. No. 1 of Grays Harbor Cnty.*, 266 P.3d 229, 235 (Wash. Ct. App. 2011))). And under that interpretation, the parties at most would have agreed to negotiate future rates for future shipments—forming a mere "agreement to agree," which is "unenforceable in Washington." *See Keystone Land & Dev. Co. v. Xerox*

4

*Corp.*, 94 P.3d 945, 948 (Wash. 2004).

Third, the district court relied on the parties' course of performance—Central Freight had billed, and Amazon had paid, "hundreds, if not thousands," of invoices at Central Freight's spot quote rates. Amazon paid those invoices even though its invoice processing system flagged most if not all of them as "off-manifest," meaning that Amazon controllers had to approve payment for them.

Course of performance is relevant to contract interpretation. *See* Wash. Rev. Code § 62A.1-303(d). And the evidence here might support inferences in Central Freight's favor. *See Spradlin Rock Prods.*, 266 P.3d at 238–39. But we are unable to say that the parties' course of performance proves for summary-judgment purposes that they agreed to modify their agreement in the manner that Central Freight advocates, much less that they did so on January 16, 2014. *See Donatelli*, 312 P.3d at 624 n.1 ("The interpretation of an oral contract is generally not appropriate for summary judgment because [its] existence . . . and its terms usually depend[] on the credibility of witnesses testifying to specific fact-based dealings which, if believed, would establish a contract and the contract's terms." (quoting *Spradlin Rock Prods.*, 266 P.3d at 235)).

We express no view on the relative strength of the parties' claims. For present purposes, it suffices to say that a jury could find that the parties did not have a meeting of the minds on January 16, 2014. *See Burnett*, 470 P.3d at 491.

5

2.      For similar reasons, we reverse the district court's alternative summary-judgment ruling that, to the extent the parties' modification required Central Freight to obtain Amazon's preapproval of all spot quotes, Amazon waived that requirement. *See Jones v. Best*, 950 P.2d 1, 6 (Wash. 1998) ("[W]aiver will not be inferred from doubtful or ambiguous factors.").

3.      In the alternative, Central Freight asks us to affirm the district court's decision on alternative grounds, namely, promissory estoppel, ratification, and substantial performance or lack of materiality. The district court did not address those theories, and we decline to consider them in the first instance. *See Planned Parenthood of Greater Wash. & N. Idaho v. United States Dep't of Health & Hum. Servs.*, 946 F.3d 1100, 1110 (9th Cir. 2020).

4.      The district court correctly granted summary judgment on Central Freight's claim seeking a declaration that "Amazon had no right [to] withhold monies owed to Central Freight as a setoff." Amazon does not argue on appeal that the parties' agreement allowed for setoff. Instead, it claims that all creditors have a common-law right to withhold payments that they owe when the counterparty owes them an equivalent sum. We disagree.

"The right of setoff . . . allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995)

6

(quoting *Studley v. Boylston Nat'l Bank*, 229 U.S. 523, 528 (1913)). But mutual debts do not extinguish one another "either automatically or by an election or other action by one party; rather, the agreement of the parties or judicial action is required." 15 Williston on Contracts § 44:34 (4th ed. 2021). And when there are mutual debts between a debtor and a creditor, "the debtor will not be excused from [its] obligation to pay regardless of any breach of duty by the creditor," even if both debts are readily quantifiable. *Id*. That principle applies here.

Amazon points to *Warren, Little & Lund, Inc. v. Max J. Kuney Co*., 796 P.2d 1263 (Wash. 1990), but that case stands for the narrower proposition that a party may bring a counterclaim for setoff using a contingent, unliquidated debt to mitigate its liability for withholding funds that it owed under a separate agreement. *Id.* at 1266. So while Amazon may maintain a counterclaim for setoff in this litigation, it may not avoid potential liability for wrongfully withholding funds just because Central Freight might owe it money for some other reason. *See* 15 Williston on Contracts § 44:35 (4th ed. 2021) ("[A] debtor violates its legal duty if it fails to pay a debt when due even though the creditor owes the debtor a larger, fully liquidated sum.").

The district court's setoff ruling also must stand even though, as Central Freight concedes, that ruling included an incorrect finding of fact: that Amazon's setoff included charges that preceded the 18-month audit window. The error was

harmless because the district court correctly held that Amazon had no right to setoff. Whether some portion of the invoices fell outside the audit window does not affect that broader conclusion.

5.    Because we partially reverse the summary-judgment order, we vacate the jury verdict and the post-trial orders predicated on it. We therefore do not reach the parties' arguments about those phases of the case.

All pending motions are denied as moot.

The parties shall bear their own costs.

**AFFIRMED in part, REVERSED in part, VACATED in part, and REMANDED**.