[No. 47645-9-I.   Division One.   April 22, 2002.]

DONALD B. MURPHY CONTRACTORS, INC., *Appellant*, v. KING COUNTY, *Respondent*.

*Bryan P. Coluccio* (of *Short Cressman & Burgess, P.L.L.C.*), for appellant.

*Stevan D. Phillips* (of *Stoel Rives, L.L.P.*) and *Norm Maleng, Prosecuting Attorney*, and *Oma L. La Mothe, Deputy*, for respondent.

BECKER, C.J. — The terms of a contract between King County and a general contractor unambiguously reflect an intent to preclude all direct claims by subcontractors against the County. For that reason, Murphy, a subcontractor, does not have a direct claim against the county as a third-party beneficiary of the county's promise to procure builder's risk insurance. We affirm the order dismissing Murphy's suit on summary judgment.

The general contractor was Frank Coluccio Construction Company. Coluccio's contract with King County was to construct a project involving the West Duwamish Waterway. Coluccio subcontracted with Donald B. Murphy Contractors, Inc., for the construction of a concrete access shaft.

Murphy encountered difficulties on the site. Completing the shaft cost more than anticipated. In March 1998, Murphy notified Coluccio of the extra expenditures and began to explore the possibility of having them covered by the County's Builder's Risk Insurance policy. Eventually, Murphy submitted a claim to the County through Coluccio. In June 1999, the County notified Coluccio that it was rejecting Murphy's claim. The County stated that no coverage was available under the County's builder's risk policy because the information supplied by Murphy did not de-

scribe any direct physical loss or damage to covered property.

In August 1999, Murphy filed an action directly against the County. The basis of the action was a provision of the contract between King County and Coluccio, in which the County promised to procure and maintain "All Risk" builder's risk insurance on the project, including the interests of subcontractors:

> The County will purchase and maintain property damage insurance upon the entire work, including materials and supplies, at the site, storage offsite or while in transit, to the insurable value thereof. The insurance shall include the interests of the County, the Contractor, subcontractors, and subsubcontractors of all tiers in the work and shall insure against physical loss or damage by perils included under an "All Risk" Builder's Risk policy form.

The County moved for summary judgment on the basis of another provision of its contract with Coluccio that expressly disclaimed any intent that subcontractors would be third-party beneficiaries of the contract:

> Subcontractors to the Contractor will not be recognized as having a direct relationship with the County, nor are subcontractors intentional or incidental third-party beneficiaries to this Contract.

The contract assigned to Coluccio the responsibility of presenting subcontractor claims to the county for coverage. Any insurance proceeds were to be paid to Coluccio, who would then have the obligation of paying to each subcontractor "a just share."

The trial court granted King County's motion for summary judgment. This appeal followed.

An appellate court reviews an order on motion for summary judgment de novo and engages in the same inquiry as the trial court. *Simpson Tacoma Kraft Co. v. Dep't of Ecology*, 119 Wn.2d 640, 646, 835 P.2d 1030 (1992). Because there are no material facts in dispute here, this court must determine whether King County was entitled to summary

judgment as a matter of law. *Doyle v. State Farm Ins. Co.*, 61 Wn. App 640, 642, 811 P.2d 968 (1991).

■ Murphy contends that King County's agreement to procure and maintain builder's risk insurance including the interests of subcontractors created an enforceable contract interest in favor of Murphy under third-party beneficiary contract principles. A third-party beneficiary contract exists when the contracting parties intend to create one. *Postlewait Constr., Inc. v. Great Am. Ins. Cos.*, 106 Wn.2d 96, 99, 720 P.2d 805 (1986). The test of intent is an objective one: whether performance under the contract would necessarily and directly benefit the third party. *Postlewait*, 106 Wn.2d at 99. "The contracting parties' intent is determined by construing the terms of the contract as a whole, in light of the circumstances under which it is made." *Postlewait*, 106 Wn.2d at 99-100. Merely incidental, indirect or inconsequential benefits to a third party are insufficient to demonstrate an intent to create a third-party beneficiary contract. *Del Guzzi Constr. Co. v. Global N.W. Ltd.*, 105 Wn.2d 878, 886-87, 719 P.2d 120 (1986).

■ The plain language of the project contract disclaims any intent to have subcontractors be third-party beneficiaries. The contract provides instead for all claims by subcontractors to be handled through the general contractor. The procedure envisioned by the contract is clear, and Murphy initially followed it. Murphy corresponded with Coluccio about its claim for a number of months before filing suit directly against the County.

Murphy argues that because it was within the class of intended beneficiaries of the County's Builder's Risk Insurance, this court should imply third-party beneficiary status. Murphy relies on *Stewart-Smith Haidinger, Inc. v. Avi-Truck, Inc.*, 682 P.2d 1108 (Alaska 1984). However, in *Postlewait Construction, Inc. v. Great American Insurance Cos.*, 41 Wn. App. 763, 768, 706 P.2d 636 (1985), *aff'd*, 106 Wn.2d 96, 720 P.2d 805 (1986), this court refused to imply a third-party beneficiary contract under facts similar to those in *Avi-Truck*. This court emphasized that Washington law

holds that the parties must intend to create an obligation to a third party. *Postlewait*, 41 Wn. App. at 768. We decline to reconsider this holding. The contract provision for insurance including the interests of subcontractors shows the County desired to benefit Murphy, but a desire to benefit a third party is not the same as an intent to assume a direct obligation to that third party. *Postlewait*, 106 Wn.2d at 100. Because the contracting parties did not intend it, we conclude that Murphy is not a third-party beneficiary to the project contract between the County and Coluccio.

■ Murphy alternatively contends that the County breached an implied covenant of good faith and fair dealing. A duty of good faith and fair dealing is deemed to exist in every contract, but it arises only in connection with the performance of specific contract obligations. If no contractual duty exists, there is nothing that must be performed in good faith. *Johnson v. Yousoofian*, 84 Wn. App. 755, 762, 930 P.2d 921 (1996). Because the County did not owe a contractual duty to Murphy, this claim was properly dismissed.

■■ Murphy also contends that the County should be held liable on a theory of negligent misrepresentation. To sustain this theory, Washington law requires evidence of justifiable reliance:

> "One who, in the course of his business . . . or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

*ESCA Corp. v. KPMG Peat Marwick*, 135 Wn.2d 820, 826, 959 P.2d 651 (1998) (quoting RESTATEMENT (SECOND) OF TORTS § 552(a) (1977)). Murphy claims that it justifiably relied on the County's promise to "purchase and maintain" all-risk insurance for the project. This claim fails because a false representation as to a presently existing fact is a prerequisite to a misrepresentation claim. *See Havens v. C&D Plastics, Inc.*, 124 Wn.2d 158, 182, 876 P.2d 435 (1994). The

County's promise to procure insurance was not a representation of a presently existing fact. Therefore, the negligent misrepresentation claim was properly dismissed.

■■ Murphy further contends that the County is estopped to deny its promise to procure insurance. But the County made no direct promise to Murphy. Murphy relies on comment (c) to section 90 of the *Restatement (Second) of Contracts* for the proposition that a promissory estoppel claim may lie where a third party relies on a promise to another.[1] Murphy has not shown, however, that the promisee's reliance may be found where the promisee lacks third-party beneficiary status. Because the contracting parties did not intend to benefit Murphy, reliance by Murphy on the promise to procure insurance was not justifiable. The promissory estoppel claim was properly dismissed.

■■ Murphy contends that the County is liable as an implied indemnitor. Implied contractual indemnity arises when one party incurs a liability the other party should discharge by virtue of the nature of the relationship between the parties. *Cent. Wash. Refrigeration, Inc. v. Barbee*, 133 Wn.2d 509, 513, 946 P.2d 760 (1997). To maintain an equitable indemnity claim, a plaintiff must establish (1) injury to a party and that party's right to assert a cause of action against the defendant and (2) settlement of the injured party's claim by the plaintiff, who itself was legally obligated to pay that claim. *In re New Eng. Fish Co.*, 749 F.2d 1277, 1282 (9th Cir. 1984) (applying Washington law). The facts of this case do not fit that description of the cause of action. Murphy also relies on *Midland Insurance Co. v. Delta Lines*, 530 F. Supp. 190 (D.S.C. 1982). However, the indemnity in that case was mandated by an express contractual provision. We conclude Murphy's indemnity claim was properly dismissed.

---

[1] *See* RESTATEMENT (SECOND) OF CONTRACTS § 90 cmt. c (1981) (*"Reliance by third persons.* If a promise is made to one party for the benefit of another, it is often foreseeable that the beneficiary will rely on the promise. Enforcement of the promise in such cases rests on the same basis and depends on the same factors as in cases of reliance by the promisee.").

Finally, Murphy contends that the trial court abused its discretion by denying a motion to amend the complaint. Murphy moved for leave to amend its complaint on September 19, 2000, seeking to add claims against the County for tortious interference with its economic interests, breach of fiduciary duty, and improper actions as an insurance claims adjuster. The trial court denied Murphy's motion for leave to amend on September 29, 2000, the same day it heard argument on the County's summary judgment motion.

Court Rule 15(a) states that leave to amend pleadings "shall be freely given when justice so requires." The "touchstone for the denial of a motion to amend is the prejudice such an amendment would cause to the nonmoving party." *Wilson v. Horsley*, 137 Wn.2d 500, 505, 974 P.2d 316 (1999).

Murphy contends it is not clear why the trial court denied the motion to amend, and argues that the record does not support a finding that the County would have suffered prejudice. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962) (refusal to grant leave to amend without stated reasons or where the reasons are not readily apparent is not an exercise of discretion). We disagree. The trial court's reasons for denying Murphy's motion are apparent in light of the circumstances shown in the record. Murphy sued the County in August of 1999. Murphy moved to amend more than a year later, on the deadline for changing the trial date and only 10 days before the summary judgment hearing. The parties had previously filed a confirmation of joinder of parties, claims and defenses in which they indicated that no additional claims or defenses would be raised. Less than two months remained before the discovery cutoff, and less than three months before the deadline for dispositive pretrial motions and the trial date.

The County opposed the amendment and argued that Murphy had waited too long; that its witnesses were already determined and disclosed; that its defenses were based on Murphy's original claims; and that it would have to retain new experts to support defenses to the new claims.

200

Such factors will support a trial court's decision to deny a motion to amend. *See Herron v. Tribune Publ'g Co.*, 108 Wn.2d 162, 167-68, 736 P.2d 249 (1987). Under the circumstances, it was reasonable to conclude that Murphy's proposed amendment was dilatory and that the County would suffer prejudice if the motion to amend were granted.

The judgment is affirmed.

GROSSE and APPELWICK, JJ., concur.