

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2014 MAR 31 AM 10: 31

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| ADC VENTURE 2011-2, LLC, | ) | No. 69954-7-I |
| Respondent, | ) | DIVISION ONE |
| v. | ) | |
| MTB ENTERPRISES, INC.; MICHAEL TONY BILANZICH and JANE DOE BILANZICH, husband and wife; and HAIRWARE USA, INC., | ) | UNPUBLISHED |
|  | ) | FILED: March 31, 2014 |
| Appellants. | ) | |
| BETTY JEAN BILANZICH and JOHN DOE BILANZICH, wife and husband; PRIME PACIFIC BANK, N.A.; ULTIMATE SURVIVAL TECHNOLOGIES, LLC; and JOHN and JANE DOES, OCCUPANTS OF THE PREMISES, | ) | |
| Defendants. | ) | |

Cox, J. — MTB Enterprises Inc., Michael Tony Bilanzich, and Hairware USA Inc. seek review of the order granting summary judgment as well as a judgment and decree of foreclosure to ADC Venture 2011-2 LLC. Because there are no genuine issues of material fact for trial and the challenges to the judgment and decree have no merit, we affirm.

In February 2007, MTB executed a promissory note in favor of ANB Financial to evidence a loan of $3.3 million to purchase commercial property (Monroe Loan). The note was secured by a deed of trust on that property. Michael T. Bilanzich and Hairware USA Inc. guaranteed payment of the loan. Bilanzich is the president of Hairware and the CEO of MTB.

The loan matured by its own terms in February 2008. In April, MTB and ANB Financial agreed in writing to extend the maturity date to April 27, 2008. MTB did not pay the loan at its new maturity date.

In May, the Federal Deposit Insurance Corporation was named receiver for ANB Financial.

On October 16, the FDIC, through its representative Mark Wolin, e-mailed Bilanzich. Wolin said that the loan had been approved for a payoff of $3,150,000 principal, and that the accrued interest and penalty fees had been waived. He indicated that this offer by the FDIC for a reduced payoff amount expired on October 31, 2008.

Bilanzich told Wolin that MTB needed another extension. In response, Wolin told Bilanzich that he would have to talk to whoever had the loan package after October 31. MTB did not pay off the loan by October 31.

The new servicing agent for the matured loan was Situs, and Stacey Efaw was its representative. Bilanzich asked Efaw for an extension of this deadline. Bilanzich testified that he never got an answer to this request.

On December 22, 2008, Situs made demand for the total amount due.

On receipt of the demand, Bilanzich asked Efaw if they were still "trying to work some lesser pay off." Efaw said he wanted to discuss that with Bilanzich and also discuss a different outstanding loan—the "Kuna Loan." Bilanzich said he could not discuss the Kuna Loan without his attorney.

On January 16, 2009, Situs sent MTB a pre-negotiation agreement for the Monroe Loan. Efaw told MTB that it was "imperative" that this agreement be executed prior to discussing the loan.

MTB's lawyer proposed revisions to this proposed agreement. Situs rejected the changes and asked MTB to sign the original proposed agreement. MTB did not do so. As a result, Situs would not discuss the loan.

In February 2011, the FDIC commenced this action against the borrower and the guarantors. It sought a money judgment for the delinquent loan, judicial foreclosure of the deed of trust securing the loan, and appointment of a receiver for the rents and profits of the property. In December 2011, the FDIC sold the loan, including the note and deed of trust, to ADC. ADC was substituted in as plaintiff.

ADC, MTB, and the guarantors all moved for summary judgment. The trial court granted ADC's motion for summary judgment and denied the motion of the others. It entered a money judgment against MTB, Bilanzich, and Hairware in the amount of $3.3 million plus accrued interest. It also ordered foreclosure of the deed of trust and a sheriff's sale of the property. Moreover, the court ordered that if any deficiency judgment remained after application of the proceeds of the

sale, then ADC shall be entitled to execution of any such deficiency against MTB, the borrower, and Bilanzich and Hairware, the guarantors.

The trial court later entered a supplemental judgment in ADC's favor for costs and attorney fees.

This appeal followed.

## SUMMARY JUDGMENT FOR ADC

Summary judgment is appropriate only if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.[1] The court must consider all facts submitted and all reasonable inferences from the facts in the light most favorable to the nonmoving party.[2] This court reviews de novo the grant or denial of a summary judgment motion.[3]

### Duty of Good Faith

MTB and the guarantors argue that there are genuine issues of material fact whether ADC's predecessor in interest and current majority owner, the FDIC, breached its duty of good faith and fair dealing. As we understand the argument, the alleged breach arises from an alleged modification of the terms of the loan in October 2008. MTB claims that Situs, on behalf of the FDIC, later reneged on this alleged agreement and attempted to obtain concessions on another

---

[1] CR 56(c).

[2] Yakima Fruit & Cold Storage Co. v. Cent. Heating & Plumbing Co., 81 Wn.2d 528, 530, 503 P.2d 108 (1972).

[3] Tiffany Family Trust Corp. v. City of Kent, 155 Wn.2d 225, 230, 119 P.3d 325 (2005).

unrelated loan. Because there are no genuine issues of material fact and ADC is entitled to judgment as a matter of law, we disagree.

The "implied duty of good faith and fair dealing" in every contract "obligates the parties to cooperate with each other so that each may obtain the full benefit of performance."[4] The duty does not inject substantive terms into a contract; rather, "it requires only that the parties perform in good faith the obligations imposed by their agreement."[5] Thus, the duty arises "only in connection with terms agreed to by the parties."[6] There is not a "free-floating duty of good faith unattached to the underlying legal document."[7] "If no contractual duty exists, there is nothing that must be performed in good faith."[8]

"Mutual modification of a contract by subsequent agreement arises out of the intentions of the parties and requires a meeting of the minds."[9] Mutual

---

[4] Badgett v. Security State Bank, 116 Wn.2d 563, 569, 807 P.2d 356 (1991).

[5] Id.

[6] Id.

[7] See id. at 570.

[8] Donald B. Murphy Contractors, Inc. v. King County, 112 Wn. App. 192, 197, 49 P.3d 912 (2002).

[9] Ebling v. Gove's Cove, Inc., 34 Wn. App. 495, 499, 663 P.2d 132 (1983).

assent generally requires a valid offer and acceptance.[10] If an offer is not accepted within the time allowed, there is no contract.[11]

Here, the loan matured by its own terms in February 2008. In April, the FDIC's predecessor in interest and MTB agreed in writing to extend the maturity date for the delinquent loan to April 27, 2008. The loan remained unpaid as of the extended date.

In October, the FDIC, as receiver, made an offer to MTB to accept a payoff of principal and it waived interest and penalties, provided this reduced payment was made by October 31, 2008. MTB never accepted that offer. Instead, MTB sought to negotiate further.

In October 2008, the FDIC's representative sent an e-mail stating that the case had been approved at a payoff of $3,150,000 principal. But the end of the e-mail states: "This commitment will expire" on October 31. It is undisputed that MTB did not pay off the loan by October 31. Accordingly, there was never an acceptance of this offer by MTB, and that offer expired of its own terms.

The lack of mutual assent between the parties is further evidenced by Bilanzich's deposition testimony about the alleged written agreement to extend the payoff:

> Q: But you never got an answer on an extension of the deadline, did you?

---

[10] Dragt v. Dragt/DeTray, LLC, 139 Wn. App. 560, 571, 161 P.3d 473 (2007).

[11] Sherrod ex rel. Cantone v. Kidd, 138 Wn. App. 73, 76-77, 155 P.3d 976 (2007).

> [Bilanzich]: *I did not.*
>
> Q: So what agreement did you have on what the deadline was?
>
> [Bilanzich]: It's been my experience in 40 years in the real estate business that when you come to a price and come to an agreement, that you can get an extension. So based on my experience, *I assumed that after Situs got done manipulating for their own benefit, in my opinion, the situation, that I would get an extension* and could pay the $3,150,000 that was the highest and best price for the property and it would close.[12]

Bilanzich's assumption that he would get an extension for MTB does not create a binding agreement. By his own words, he never got an answer on the extension of the deadline. This testimony further demonstrates that the parties did not mutually agree to modify the contract, and thus, there were no additional obligations imposed on the FDIC as a result of these attempted negotiations.

Accordingly, this record does not demonstrate any breach of any duty by the FDIC. There was no duty to extend again the maturity date of the delinquent loan. And there was no duty to make the offer for a reduced payoff amount. Rather, the FDIC made an offer that MTB never accepted. In the absence of any acceptance of the offer, there simply was no contract under basic contract rules of offer and acceptance.

Further, as previously recited, the duty of good faith arises "only in connection with terms agreed to by the parties."[13] There is not a "free-floating

---

[12] Clerk's Papers at 483 (emphasis added).

[13] Badgett, 116 Wn.2d at 569.

duty of good faith unattached to the underlying legal document."[14] Thus, because there are no express terms that give rise to the duty of good faith, MTB's claims that the FDIC breached its express and implied obligations to MTB under the loan documents fail.

MTB argues otherwise. None of these arguments are persuasive.

First, MTB points to a provision in the original loan agreement entitled "Obligations Independent" to argue that the FDIC had the power to extend or modify the terms of the loan and had an "obligation to exercise that power in good faith." The relevant portion of that provision states:

> [MTB] agree[s] that [the FDIC] *may at [its] option* extend this note or the debt represented by this note, or any portion of the note or debt, from time-to-time without limit or notice and for any term without affecting [MTB's] liability for payment of the note.[15]

But the plain language of this provision is permissive and gives the FDIC the sole "option" to extend the note without limit or notice. It does not create any obligation for the FDIC to extend the maturity date of the note. Rather, it is purely permissive on the part of the FDIC to extend the note in its sole discretion. Accordingly, this provision does not give rise to any contractual duty to extend.

Additionally, as we already explained, there was no modification of this loan agreement in October 2008 that obligated the FDIC to extend the note. There was no more than an offer to extend the maturity date of the note that was never accepted.

---

[14] Id. at 570.

[15] Clerk's Papers at 457 (emphasis added).

8

Second, MTB asserts that there is a question of fact whether the FDIC agreed to modify the MTB Loan in October 2008. MTB argues that a jury could conclude that the FDIC, "through its actions, extended the due date for the Monroe Loan with only the date of final payoff left uncertain." But "a course of dealing does not override express terms in a contract or add additional obligations."[16] "Rather, it is a tool for interpreting the provisions of a contract."[17] Additionally, as discussed previously, the plain language of the FDIC's offer expressly stated that it "expired" on October 31. For these reasons, MTB's assertion that the FDIC extended the due date "through its actions" is not persuasive.

Third, MTB contends that there are questions of fact whether the FDIC reneged on its agreement to modify the Monroe Loan. But, because there was no agreement to modify the Monroe Loan, there was no reneging on any binding agreement. Further, "[A]s a matter of law, there cannot be a breach of the duty of good faith when a party simply stands on its rights to require performance of a contract according to its terms."[18] Here, by declining to extend the maturity date of the note, the FDIC was standing on its rights to require performance of the contract.

Finally, MTB argues that Situs "attempted to link refinancing of the Monroe Loan to resolution of the Kuna litigation," "ceased all communications with MTB,"

---

[16] Badgett, 116 Wn.2d at 572.

[17] Id.

[18] Id. at 570.

"ignored the request of the FDIC to try to resolve the matter," and "refused to provide . . . payoff information so that the loan could be processed and completed." Overall, MTB argues that "[t]hese material facts could easily persuade a reasonable jury that the FDIC, through the deliberate and intentional actions of its agent Situs, impeded MTB from renegotiating the loan and from ultimately paying it off."

But the record does not support the assertion that the FDIC refused to provide payoff information so that the loan could be processed and completed. Additionally, as discussed previously, the FDIC and its agents were under no obligation to renegotiate or to extend the note. MTB was already in default. Thus, MTB fails to establish how this conduct is a breach of specific contractual obligations.

MTB also argues that ADC is liable for the conduct of its predecessor, the FDIC, which breached the duty of good faith. Because there is no liability of the FDIC, this argument does not raise any material issue.

*Mitigation of Damages*

MTB and the guarantors contend that the trial court erred in granting summary judgment in favor of ADC because there are material factual disputes about whether ADC mitigated its damages. Because delinquent interest on this loan does not qualify as damages, we reject this argument.

The doctrine of mitigation of damages prevents recovery for damages the injured party could have avoided by reasonable efforts.[19]

But, in Farm Credit Bank of Spokane v. Tucker, Division Three distinguished a contract right to interest from prejudgment interest which is claimed as damages.[20] There, the court rejected the Tuckers' argument that foreclosure is an equitable action and a court, acting in equity, can disallow interest on equitable grounds.[21] It stated:

> Interest is given on money demands as damages for delay in payment, being just compensation to the plaintiff for a default on the part of his debtor. *Where it is reserved expressly in the contract,* or is implied by the nature of the promise, *it becomes part of the debt, and is recoverable as of right;* but when it is given as damages, it is often [a] matter of discretion . . . . [22]

Accordingly, it concluded that "[t]he court has the authority to disallow interest on equitable grounds *only if* the interest claimed is prejudgment interest."[23] Thus, it held that because the bank claimed interest as a result of its contract with the Tuckers, as set forth in the promissory note, the trial court erred when it disallowed interest on equitable grounds.[24]

---

[19] Jaeger v. Cleaver Const., Inc., 148 Wn. App. 698, 714, 201 P.3d 1028 (2009).

[20] 62 Wn. App. 196, 200, 813 P.2d 619 (1991).

[21] Id.

[22] Id. at 201 (quoting Redfield v. Ystalyfera Iron Co., 110 U.S. 174, 176, 3 S. Ct. 570, 28 L. Ed. 109 (1884)).

[23] Id. at 200 (emphasis added).

[24] Id. at 201.

Similarly, in <u>Metropolitan Mortgage & Securities Co. Inc. v. Becker</u>, Division Three of this court distinguished an action for damages from an action for unpaid debt.[25] The court held that because the action was for an unpaid debt and not for damages, the trial court "correctly determined Metropolitan had no duty to mitigate."[26]

Here, <u>Farm Credit</u> and <u>Metropolitan Mortgage</u> support the conclusion that the failure to mitigate claim has no basis. This is an action for an unpaid debt, not an action for damages. Thus, we reject this claim.

MTB argues that there are material factual disputes about whether ADC mitigated its damages. There are none.

First, MTB argues that "[i]t would not have been unreasonable for the FDIC to bring a foreclosure suit in a more timely fashion" and "a jury could determine that the FDIC did not act reasonably with respect to mitigation." Because there was no duty to mitigate, this argument is not persuasive.

Next, MTB attempts to distinguish <u>Farm Credit</u>, on the basis that in <u>Farm Credit</u>, the bank's delay was brought by the borrower, while here, "MTB had nothing to do with the delay."[27] But it appears that this argument relates to the question of reasonableness, and because there was no duty to mitigate, this factual distinction is not relevant. Further, <u>Farm Credit</u>'s primary analysis does not center on the reason for the delay. Rather, it focuses on the distinction

---

[25] 64 Wn. App. 626, 631, 825 P.2d 360 (1992).

[26] <u>Id.</u>

[27] Brief of Appellant at 23 (citing <u>Farm Credit</u>, 62 Wn. App. 196).

between interest claimed as damages versus interest claimed by reason of a contract. And that distinction supports ADC's position that there was no failure to mitigate.

MTB also argues that while the FDIC's right to interest is based on a contract, "even a contract right can be waived by a parties' [sic] conduct."[28] But MTB makes no argument as to how the FDIC engaged in conduct that would result in waiver.[29] Thus, MTB's argument is not persuasive.

Finally, MTB cites In re Arland's Estate for the principle that "[e]quity will not enforce a contract where the result will be harsh and oppressive."[30] MTB argues that enforcing the default interest rate in the loan without requiring the FDIC/ADC to mitigate their damages is "precisely the kind of result foreseen by the Arland's Estate court."[31] Because damages are not at issue and there is no showing that the result of enforcing default interest is either harsh or oppressive, we reject this claim.

### RCW 61.12.120

The parties next argue that the trial court erred in denying summary dismissal of the guarantors, Bilanzich and Hairware USA. They claim that RCW 61.12.120 requires dismissal. The statute requires no such thing.

---

[28] Id. (citing Mike M. Johnson, Inc. v. County of Spokane, 150 Wn.2d 375, 386, 78 P.3d 161 (2003)).

[29] Id.

[30] Brief of Appellants at 24 (quoting In re Arland's Estate, 131 Wash. 297, 299, 230 P. 157 (1924)).

[31] Id.

This court reviews questions involving the legal interpretation of statutes de novo.[32] A court's goal in interpreting a statute is to give effect to the legislature's intent.[33] An appellate court first looks to the statute's plain language.[34] If the statute's meaning is plain on its face, the inquiry ends.[35]

RCW 61.12.120 states:

> The plaintiff shall not proceed to foreclose his or her mortgage while he or she is prosecuting *any other action* for *the same debt or matter which is secured by the mortgage*, or while he or she is seeking to obtain execution of any judgment in such other action; nor shall he or she prosecute any other action for the same matter while he or she is foreclosing his or her mortgage or prosecuting a judgment of foreclosure.[36]

By its plain language, this statute bars foreclosure while there is pending "any other action" for "the same debt or matter which is secured by the [deed of trust]."[37] Here, this action includes both a judicial foreclosure of the deed of trust as a mortgage as well as a request for judgment on the note secured by the deed of trust. In addition, ADC seeks judgment on the guaranties of payment, obligations that are separate from the note. Because there is no "other action" for any of these claims, we reject the guarantors' argument.

---

[32] State v. Jacobs, 154 Wn.2d 596, 600, 115 P.3d 281 (2005).

[33] Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010).

[34] State v. Armendariz, 160 Wn.2d 106, 110, 156 P.3d 201 (2007).

[35] Id.

[36] (Emphasis added.)

[37] RCW 61.12.120.

There is an additional basis to reject this argument. The guaranties of payment are not "secured by the [deed of trust]."[38] Rather, they are separate obligations from the promissory note that is secured by the deed of trust. Because the guaranties are not, "secured by the [deed of trust]," there is no violation of this statute.

The rationale behind this statute was articulated in Hinchman v. Anderson, where the supreme court stated that the statute "did not prevent the plaintiff from making all the parties to the notes parties to the action and proceeding against all in one action."[39] Instead, "It simply prohibited the plaintiff from splitting up his cause of action and maintaining two separate actions for the same debt at the same time."[40]

The same rationale applies to joining the parties to the note and the guaranties to this action and proceeding against all in one action. And there is no showing that judicial economy would be better served by pursuing the guarantors in a separate action. To the contrary, judicial economy would not be served.

The parties cite Davis v. Starkenburg to argue "the only proper parties to a foreclosure action are the mortgagor, the mortgagee, and those who have

---

[38] Id.

[39] 32 Wash. 198, 206, 72 P. 1018 (1903).

[40] Id.

15

acquired any interest from either of them, subsequent to the mortgage."[41] But this rule is lifted out of context from cases that do not involve RCW 61.12.120. Thus, it is not relevant to our analysis.

The parties next rely on <u>American Federal Savings & Loan Association of Tacoma v. McCaffrey</u> for the proposition that "concurrent actions to obtain execution of a judgment and foreclose on the mortgaged property are prohibited."[42] The parties also rely on that same case to argue that a mortgagee may proceed against guarantors to satisfy the debt as an alternative remedy, and they argue that a mortgagee cannot proceed against both at the same time. But <u>McCaffrey</u> is distinguishable, as it did not involve an action against guarantors.

In sum, the guarantors fail to persuasively explain why the plain words of RCW 61.12.120 support their argument. They do not. And they have also failed to cite a single controlling case to support their argument that guarantors are not proper parties to a foreclosure action for the debt guaranteed. We assume they have found no such case. Their arguments are wholly unpersuasive, and we reject them.

## ATTORNEY FEES

Both sides request attorney fees on appeal based on the contract provisions in the loan documents. Based on those documents, we award reasonable attorney fees to ADC.

---

[41] Brief of Appellants at 27 (emphasis omitted) (quoting <u>Davis v. Starkenburg</u>, 5 Wn.2d 273, 281, 105 P.2d 54 (1940)).

[42] <u>Id.</u> at 25 (emphasis omitted) (citing <u>Am. Fed. Sav. & Loan Ass'n of Tacoma v. McCaffrey</u>, 107 Wn.2d 181, 189-90, 728 P.2d 155 (1986)).

As MTB concedes, the loan documents all provide that the lender is entitled to its attorney fees and costs. RCW 4.84.330 makes this unilateral provision bilateral. Thus, it is the "prevailing party" who is entitled to an award. ADC is the prevailing party in this appeal.

We affirm the summary judgment order and judgment and decree of foreclosure. We also award attorney fees and costs to ADC, subject to its compliance with RAP 14.1 et. seq.

Cox, J.

WE CONCUR: