FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2017 MAY 15 AM 8: 19



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| STEVEN and KAREN DONATELLI, a married couple, | ) ) ) | No. 74447-0-I |
|  | ) ) | DIVISION ONE |
| Appellants, | ) ) |  |
| v. | ) ) |  |
| D.R. STRONG CONSULTING ENGINEERS, INC., a Washington corporation, | ) ) ) ) | UNPUBLISHED |
|  | ) | FILED: May 15, 2017 |
| Respondent. | ) ) ) |  |

Cox, J. — Steven and Karen Donatelli (collectively, "Donatelli") appeal the trial court's grant of partial summary judgment to D.R. Strong Consulting Engineers Inc. on their negligence and negligent misrepresentation claims. There were no genuine issues of material fact for either of these two substantive claims. D.R. Strong was entitled to judgment as a matter of law. The trial court did not abuse its discretion in the amount of its award of attorney fees to D.R. Strong at trial. We affirm.

This is the fifth time a court has addressed the underlying claims of negligence and negligent misrepresentation that Donatelli asserts. Two prior published decisions in this case set forth the factual and procedural background

of this case.[1] We only repeat here what is necessary for an understanding of this decision.

Donatelli hired D.R. Strong to help develop their real property.[2] This began when Donatelli obtained preliminary plat approval from King County in October 2002.[3] This preliminary approval was valid for 60 months.[4]

In October 2002, the parties entered into a written agreement for the consulting engineers to perform six phases of defined engineering services.[5] Included within this agreement was also a provision titled "Limitation of Professional Liability."[6]

The plat was not completed by October 2007, the expiration date for the preliminary approval King County granted in October 2002. Thereafter, D.R. Strong assisted Donatelli to obtain new approval for the plat.

The real estate market crashed in 2008. Donatelli had not obtained final plat approval and the project remained unfinished. Ultimately, Donatelli ran out of money and lost the property to foreclosure.

---

[1] Donatelli v. D.R. Strong Consulting Eng'rs, Inc., 179 Wn.2d 84, 312 P.3d 620 (2013); Donatelli v. D.R. Strong Consulting Eng'rs, Inc., 163 Wn. App. 436, 261 P.3d 664 (2011).

[2] Donatelli, 179 Wn.2d at 87.

[3] Id.

[4] Id. at 88.

[5] Clerk's Papers at 242-47.

[6] Id. at 247.

2

Donatelli sued D.R. Strong, claiming breach of contract, violation of the Consumer Protection Act (CPA), negligence, and negligent misrepresentation. The trial court granted D.R. Strong summary judgment on the CPA claim. But it denied summary judgment on the negligence and negligent misrepresentation claims.

We granted discretionary review of the denial of summary judgment on these two substantive claims and affirmed. We did so based on two then recent decisions of the supreme court.[7]

The supreme court granted discretionary review of this court's decision. It affirmed on different grounds and remanded the case to the trial court for further proceedings.[8]

Upon remand, D.R. Strong moved separately for partial summary judgment on the negligent and negligent misrepresentation claims. The trial court granted summary judgment dismissing the negligence claim.[9] The court later dismissed the negligent misrepresentation claim as well.[10]

The breach of contract claim went to trial. A jury determined that D.R. Strong did not breach its agreement with Donatelli.[11] Because the briefing in this

---

[7] Donatelli, 163 Wn. App. at 438 (citing Eastwood v. Horse Harbor Found., Inc., 170 Wn.2d 380, 241 P.3d 1256 (2010); Affiliated FM Ins. Co. v. LTK Consulting Servs., Inc., 170 Wn.2d 442, 243 P.3d 521 (2010)).

[8] Donatelli, 179 Wn.2d at 98.

[9] Clerk's Papers at 785-91.

[10] Id. at 792-93.

[11] Id. at 794.

3

appeal does not address this jury verdict, we deem abandoned any challenge to that verdict.[12]

The trial court later awarded D.R. Strong reasonable attorney fees based on a provision in the written agreement between the parties.

Donatelli appeals.

## NEGLIGENCE

Donatelli argues that the trial court ignored facts and case law that precluded summary dismissal of the negligence claim. We disagree.

Summary judgment is proper "only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."[13] "A genuine issue of material fact exists if 'reasonable minds could differ on the facts controlling the outcome of the litigation.'"[14] We consider "the evidence and all reasonable inferences from [such] evidence in the light most favorable to the nonmoving party."[15]

The party moving for summary judgment bears the initial burden to show there is no genuine issue of material fact.[16] The nonmoving party can then rebut

---

[12] See Holder v. City of Vancouver, 136 Wn. App. 104, 107, 147 P.3d 641 (2006).

[13] Scrivener v. Clark Coll., 181 Wn.2d 439, 444, 334 P.3d 541 (2014); see also CR 56(c).

[14] Knight v. Dep't of Labor & Indus., 181 Wn. App. 788, 795, 321 P.3d 1275 (2014) (quoting Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008)).

[15] Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015).

[16] Podbielancik v. LPP Mortgage Ltd., 191 Wn. App. 662, 668, 362 P.3d 1287 (2015).

this contention.[17] If she fails to show "'the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial'" then summary judgment is proper.[18]

We review de novo a trial court's grant of summary judgment.[19]

Here, the threshold issue is whether there were genuine issues of material fact for trial on the negligence claim. We are guided by the supreme court's previous ruling in this case in deciding that threshold issue.

In that prior appeal, the supreme court held that the independent duty doctrine cannot apply to this case *because the record does not establish the scope of D.R. Strong and the Donatellis' contractual claims.*[20] The court also held that "Because there are *genuine issues of material fact regarding the scope of D.R. Strong's contractual duties to the Donatellis*, [the court] cannot apply the independent duty doctrine to say, one way or the other, whether D.R. Strong had a duty independent of the contract to avoid professional negligence."[21]

The trial court read these supreme court holdings to require a determination of "what duties have been assumed by the parties *within* the

---

[17] Id.

[18] Id. (quoting Young v. Key Pharm. Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989).

[19] Donatelli, 179 Wn.2d at 90.

[20] Id. at 98 (emphasis added).

[21] Id. (emphasis added).

contract."[22] Only then, could there be a determination "whether a duty arises *independently* of the contract."[23]

Based on this reading of the supreme court's decision, the question is whether there were genuine issues of material fact on the scope of the duties D.R. Strong owed to Donatelli based on their written and oral agreements. The trial court put it this way:

> The implication [of the supreme court's decision] is that, at least in the context of this case, alleged violations of duties defined by contract cannot give rise to tort claims.[24]

Accordingly, the question is whether there were genuine issues of material fact "regarding the scope of D.R. Strong's contractual duties to [Donatelli.]"[25]

To answer this question, the court examined the 2010 deposition testimony of Steven Donatelli and other evidence in the record on summary judgment. Specifically, the examiner at that deposition directed the attention of Steven Donatelli to the October 2002 written agreement between the parties. After doing so, the following questions and answers were memorialized in this record:

Q: Is that your signature?

A: Yes.

Q: And you signed it on October 31, 2002?

A: Yes.

---

[22] Clerk's Papers at 786 (quoting Donatelli, 179 Wn.2d at 92).

[23] Id. (quoting Donatelli, 179 Wn.2d at 92).

[24] Id. at 787.

[25] Id.

Q: And then the last page is called general conditions — schedule of charges and general conditions; true?

A: Yes.

Q: Now, did you talk with Luay or Rick Olson [of D.R. Strong] about the proposal for services and what it is they were going to do for you before you got this?

A: I'm sure we had a brief conversation and then they sent over the proposal.

Q: Did you negotiate the scope of these services with Luay or Rick or both or neither?

A: I believe with Rick.

Q: All right.

A: Actually it could have been both. It was eight years ago and this — I don't know.

Q: Do you recall what it is you told either Luay or Rick that you wanted them to do for you?

A: Yeah, get a short plat done.

Q: Did you say anything more than that?

A: I can't recall if I did or didn't but that was my initial — that's what I wanted.

Q: Did this scope of services proposal, was that consistent with the terms and descriptions consistent with what you had asked for?

A: I'm sure it was with anything additional to finish the short plat.

Q: What do you mean by that?

A: Whatever it took to get it done.

Q: Was there anything absent from this?

A: I'm not sure if there is anything absent or not.

Q: Would you take a minute and read it?

A: Oh, I've read it before. This is eight years ago so it's like, you know, I hired them for that purpose.

Q: To complete the short plat?

A: Yes.

. . . .

Q: Okay. Does this contract, the scope of services, describe all of the paperwork that you wanted them to prepare?

A: Yes. With — if there was any other things needed for the short plat to be recorded then you would — they would add additional services to achieve my goal. That's — I don't know however else I can answer that.[26]

A related issue is whether D.R. Strong orally agreed to act as project manager. The written contract does not say so. The declaration of Richard Olsen of D.R. Strong, which the trial court identified in its opinion, states:

> Mr. Donatelli did not tell us he was incompetent to handle this project. The record shows he took the plans to the respective agencies; he obtained all permits for construction (except for the hydrant), he hired all the contractors, and he gave us direction when we asked for it. Under our contract with him, we did not agree to be his "Construction Manager."[27]

Both Steven Donatelli's deposition testimony and Richard Olsen provide evidence that there were no undertakings by D.R. Strong other than those in the October 2002 written agreement between the parties. Thus, the burden shifted to Donatelli to show the existence of a genuine issue of material fact on these points.

An examination of Steven Donatelli's declaration does not raise any genuine issue of material fact. It does not change the clear answers to clear questions given in his 2010 deposition testimony. Likewise, it does not otherwise refute the evidence provided by the moving party. Thus, the full scope of

---

[26] Id. at 289-90.

[27] Id. at 788.

expectations of the parties was contained in their written agreement. There was nothing else.

There were no genuine issues of material fact. D.R. Strong was entitled to judgment as a matter of law.

Donatelli argues that an independent duty did exist under RCW 18.43 and WAC 197-27. Not so.

In the prior appeal, the supreme court stated:

> Regardless of whether a client's claim is framed as a breach of contract or a tort claim, however, "the first step in analyzing a professional malpractice claim is to determine the scope of the professional obligations." The scope of engineers' professional obligations should be set forth in written contracts between engineers and their clients.[28]

As the supreme court directed, the trial court focused first on the written and oral agreements of the parties to decide the scope of the engineer's obligations to the client in this case. We note that Steven Donatelli's deposition testimony establishes there was no evidence that the engineers assumed additional professional obligations by any affirmative conduct. Accordingly, the statutory citations underlying this argument are simply inapplicable to this case.

Donatelli also argues that the trial court impermissibly relied on Steven Donatelli's 2010 deposition testimony to conclude that only the contract imposed a duty on D.R. Strong. The argument is that a lay witness's testimony is insufficient to determine whether an independent duty exists and that the trial

---

[28] Donatelli, 179 Wn.2d at 93 (internal citation omitted) (quoting ARCHITECT AND ENGINEER LIABILITY: CLAIMS AGAINST DESIGN PROFESSIONALS § 501[E], at 94 (Kevin R. Sido ed., 3d ed. 2006)).

9

court impermissibly failed to consider the extra-contractual legal authorities just discussed. This argument is also unpersuasive.

First, Donatelli mischaracterizes the trial court's action. The trial court did not use lay witness testimony to establish whether an independent tort duty existed. Rather, it considered that testimony from a party to the oral and written agreements to confirm that the written agreement evidenced the full range of duties that they agreed upon. Donatelli provides no authority showing this approach was impermissible.[29]

Second, Donatelli raised these authorities in their briefing on summary judgment. A fair reading of the trial court's Amended Memorandum Opinion shows that the trial court properly considered all material then properly before it on summary judgment before ruling.

Thus, these arguments about how the trial court reached its determination are unpersuasive.

### NEGLIGENT MISREPRESENTATION

Donatelli argues that the trial court improperly granted D.R. Strong summary judgment on the negligent misrepresentation claim. We disagree.

Unlike negligence, a party may recover for negligent misrepresentation "even when only economic damages are at stake and the parties contracted against potential economic liability," so long as the duty to not make negligent

---

[29] See Darkenwald v. Emp't Sec. Dep't, 183 Wn.2d 237, 248, 350 P.3d 647 (2015); RAP 10.3(a)(6).

misrepresentations arises independently of the contract.[30] It does so when one party employs negligent misrepresentations to induce another into the contract.[31]

The issue is whether D.R. Strong's alleged future predictions regarding project completion and cost constitute actionable misrepresentations. The supreme court did not address this issue in the prior appeal.

The trial court did so on remand, following D.R. Strong's summary judgment motion. It is black letter law that "a false representation as to a presently existing fact is a prerequisite to a misrepresentation claim."[32] Thus "a false promise does not constitute [representation of] an existing fact."[33]

The supreme court has explained that "a representation that something will be done in the future, or a promise to do it, from its nature cannot be true or false at the time when it is made."[34] "Where the fulfillment or satisfaction of the thing represented depends upon a promised performance of a future act, or upon the occurrence of a future event, or upon particular future use, or future requirements of the representee, then the representation is not of an existing fact."[35]

---

[30] Donatelli, 179 Wn.2d at 95-96.

[31] Id. at 96.

[32] Donald B. Murphy Contractors, Inc. v. King County, 112 Wn. App. 192, 197, 49 P.3d 912 (2002).

[33] Adams v. King County, 164 Wn.2d 640, 662, 192 P.3d 891 (2008).

[34] Shook v. Scott, 56 Wn.2d 351, 355, 353 P.2d 431 (1960).

[35] Id. at 356 (internal citation omitted).

Here, Donatelli contends that D.R. Strong negligently misrepresented project completion times and costs. Such representations predicted future events. As such, they did not concern "presently existing fact[s]."[36] They cannot support a negligent misrepresentation claim. The trial court properly granted summary judgment on this claim as there was no genuine issue of material fact whether D.R. Strong misrepresented a presently existing fact.

Donatelli mistakenly relies on Haberman v. Washington Public Power Supply System.[37] In that case, certain institutional investors intervened in a bondholders' derivative suit against Washington Public Power Supply System, asserting it had negligently misrepresented investment matters concerning its nuclear power plant development.[38] The investors claimed that certain professionals, working for the power supply system, had negligently misrepresented facts to the entity creating reports sent to the investors' client's bondholders, causing them to suffer financial loss in reliance on the reports.[39]

Amongst other matters, the supreme court reversed a CR 12(b)(6) dismissal of the negligent misrepresentation claim.[40] It concluded that the trial court erred in holding that the professionals owed no duty beyond their duty to

---

[36] Donald B. Murphy Contractors, Inc., 112 Wn. App. at 197.

[37] 109 Wn.2d 107, 744 P.2d 1032 (1987).

[38] Id. at 114, 161.

[39] Id. at 161.

[40] Id. at 163.

12

the report creating entity.[41] It expressly narrowed its review to this issue and did not consider whether future predictions could support a negligent misrepresentation claim.[42]

Nor did it state that the alleged misrepresentations concerned future predictions.[43] It explained that the relevant reports "contained misstatements[,] material omissions," and "negligent or fraudulent recommendations regarding need, cost, and feasibility."[44] Donatelli characterizes these needs, costs, and feasibility as future oriented. But the supreme court did not do so. Thus, Haberman is not controlling in this case.

Donatelli's reliance on Keyes v. Bollinger[45] is equally misplaced. In that case, Steven Keyes brought an action against his homebuilder Robert Bollinger for violation of the CPA.[46] Bollinger had represented he would finish construction by a certain date and meet local quality standards.[47] But the project dragged on past that date and ultimately fell below those standards.[48]

This court concluded that under such circumstances, the CPA provided recovery. It explained that a contractor like Bollinger did not provide such

---

[41] Id. at 164.

[42] Id.

[43] Id. at 119.

[44] Id.

[45] 31 Wn. App. 286, 640 P.2d 1077 (1982).

[46] Keyes v. Bollinger, 27 Wn. App. 755, 757, 621 P.2d 168 (1980).

[47] Id.

[48] Id.

estimates "merely to be helpful to the purchaser."[49] One did so to induce the purchaser into entering a contractual relationship.[50] As such, "a contractor engages in an 'unfair or deceptive' act [under the CPA] by 'estimating' or representing probable completion or repair dates to purchasers, with which 'estimates' he is unable to substantially comply due to reasons which should be reasonably foreseeable in light of the contractor's knowledge and experience."[51]

The obviously distinguishing feature between that case and this one is that a negligent misrepresentation claim is not a CPA claim. To make out a claim for negligent misrepresentation, a party must show that the defendant negligently supplied false information upon which the plaintiff reasonably relied to her detriment.[52] But the elements of a CPA claim are "(1) an unfair or deceptive act, (2) in trade or commerce, (3) that affects the public interest, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act complained of and the injury suffered."[53] Thus, the elements of a CPA claim are immaterial to a negligent misrepresentation claim. Accordingly, that case is unhelpful here.

---

[49] Keyes, 31 Wn. App. at 291.

[50] Id.

[51] Id. at 292.

[52] Dewar v. Smith, 185 Wn. App. 544, 562, 342 P.3d 328 (2015).

[53] Trujillo v. Nw. Tr. Servs., Inc., 183 Wn.2d 820, 834-35, 355 P.3d 1100 (2015).

## ATTORNEY FEES

### *At Trial*

Donatelli argues that the trial court improperly awarded D.R. Strong attorney fees for defending against the negligence claims. We disagree.

Donatelli focuses on the amount the trial court awarded in attorney fees to D.R. Strong, claiming D.R. Strong failed to segregate the time spent defending against the negligence and other tort claims from that spent defending against the contract claims. Not so.

In some circumstances, an attorney may be only able to recover fees on some of her claims.[54] In such circumstances, the award must "reflect a segregation of the time spent on issues for which fees are authorized."[55] But the trial court need not segregate time if the various claims are "'so related that no reasonable segregation of successful and unsuccessful claims can be made.'"[56] Thus, where all claims "'relate to the same fact pattern, but allege different bases for recovery,'" the court may decline to segregate.[57]

We review for abuse of discretion the amount of attorney fee awarded.[58] A trial court abuses its discretion when its decision is manifestly unreasonable or

---

[54] Boguch v. Landover Corp., 153 Wn. App. 595, 619, 224 P.3d 795 (2009).

[55] Id. at 619-20.

[56] Id. at 620 (quoting Mayer v. City of Seattle, 102 Wn. App. 66, 80, 10 P.3d 408 (2000)).

[57] Id. (quoting Ethridge v. Hwang, 105 Wn. App. 447, 461, 20 P.3d 958 (2001)).

[58] Id. at 619.

based on untenable grounds.[59]   Here, this exception to segregating fees applied.  D.R. Strong sought and received attorney fees under the terms of the contract.  Those terms did not embrace the claim for negligent misrepresentation because such a claim arose independently of the contract.  Thus the trial court appropriately directed D.R. Strong to segregate fees incurred defending against that claim, and D.R. Strong did so.

But the negligence claim "relate[d] to the same fact pattern" as the breach of contract claim because both concerned failure to complete the project within certain terms.[60]  It simply "allege[d] [a] different bas[i]s for recovery."[61] Accordingly, the trial court did not have to segregate those fees incurred defending against the negligence claim from those incurred defending against the breach of contract claim.  It did not err in awarding fees on the negligence claim.

Donatelli also argues that the trial court abused its discretion in adjusting D.R. Strong's fee award upwards.  Not so.

Washington courts apply the "lodestar" formula to calculate attorney fee awards, tallying the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.[62]  In determining that reasonable rate, the

---

[59] Id.

[60] Id. at 620.

[61] Id.

[62] Bowers v. Transamerica Title Inc. Co., 100 Wn.2d 581, 593-94, 675 P.2d 193 (1983) (quoting Miles v. Sampson, 675 F.2d 5, 8 (1st Cir. 1982)).

16

court may consider, amongst other factors, counsel's experience, skill, and the rate charged by comparably skilled practitioners in the area.[63]

After calculating the appropriate "lodestar" amount, the court may adjust it upwards or downwards in two circumstances.[64] First, it may do so to account for contingency fee arrangements, given the special risk an attorney assumes when he takes such a case.[65] Second, it may adjust the award to reflect the attorney's "unusually good or bad" skill in the litigation.[66] The court adjusts only when it has not already factored in these circumstances in determining the reasonable "lodestar" amount.[67]

Here, Donatelli challenges the reasonableness of allowing D.R. Strong's counsel to claim an award in excess of its charged fee. But the trial court properly determined what a reasonable rate was for this case: $300 per hour. Specifically, the court explained that it allowed such an award to reflect D.R. Strong's counsel's extensive experience and "great skill [shown] in defending his client." It also considered rates charges by comparably skilled practitioners in the Seattle area. Given such reasons, the trial court did not abuse its discretion in determining that the fee rate requested by D.R. Strong's counsel was

---

[63] Allard v. First Interstate Bank of Wash., N.A., 112 Wn.2d 145, 149-50, 768 P.2d 998, 773 P.2d 420 (1989).

[64] Bowers, 100 Wn.2d at 593-94.

[65] Id.

[66] Id. at 599 (quoting Copeland v. Marshall, 641 F.2d 880, 893 (1980)).

[67] Id. at 593-94.

reasonable. Thus, the argument that the trial court allowed a retroactive increase in rates is not well taken.

Donatelli also challenges the court's alleged adjustment upwards, contending that D.R. Strong's counsel did not take the case on contingency, and the court did not find counsel's quality sufficiently unusual to justify an adjustment. But this contention ignores the trial court's order. The trial court explicitly stated that it had "already taken the quality of [D.R. Strong's counsel's] work and his experience into consideration in upwardly adjusting his hourly rate. Therefore no multiplier is warranted."

*On Appeal*

D.R. Strong seeks attorney fees on appeal. We award such fees, subject to compliance with RAP 18.1(d).

Here, the contract provides:

> [should] the Client make[] a claim against [D.R. Strong] and/or its staff at law or otherwise, for any alleged errors, omission, or other act arising out of the performance of our professional services, and the Client fails to prove such claim or prevail in an adversary proceeding, then the Client will pay all costs incurred by [D.R. Strong] and/or its professional staff in defending itself against the claim, including all attorney's fees.[68]

This provision supports the award of fees on appeal to D.R. Strong.

Donatelli argues that this court should not award fees based on this provision because the provision does not cover defense of the tort claims in this appeal. This argument is unpersuasive.

---

[68] Clerk's Papers at 32.

The breadth of the above language makes this argument untenable. We reject it.

We affirm all decisions of the trial court. We award attorney fees on appeal to D.R. Strong, subject to its compliance with RAP 18.1(d).

Cox, J.

WE CONCUR:

Spearman, J.

Dwyer, J.