
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| SEATTLE-TACOMA INTERNATIONAL TAXI ASSOCIATION, a Washington nonprofit association,<br><br>Appellant,<br><br>v.<br><br>GURUNHAM SINGH KOCHAR; KAHSAI SIUM; CABDI NUUR CALASOW; DEEQ A. FARAH; MICHAEL B. MEGNTA; GENENE DERAMU; NIRMAL CHEEMA; PARMINDER SINGH CHEEMA; PARAJMIT SINGH DHALIWAL; SARAWAN SINGH BAL; MUSTAFE HASSAN ISMAIL; HASSAN MOHAMED; DEJENE W. GEMECHU; and SOLOMON MELLES,<br><br>Respondents. | No. 70843-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED<br><br>FILED: <u>December 22, 2014</u> |

Cox, J. — Seattle-Tacoma International Taxi Association (STITA) appeals the adverse judgment on a counterclaim by certain taxi drivers and non-driving part-owners (collectively "the drivers") who contracted with STITA.[1] Following a bench trial, the trial court concluded that STITA negligently misrepresented material matters to the drivers. The court ordered rescission and awarded certain monetary amounts to each of the drivers.

---

[1] Although the respondents include both taxi drivers and non-driving part-owners, both parties refer to the respondents as "the drivers." We adopt that terminology for this opinion.

STITA primarily claims this was incorrect because there was no evidence of damages, an essential element of a negligent misrepresentation claim. Because the drivers established all elements of their misrepresentation claim, we reject STITA's arguments to the contrary. We also reject STITA's remaining arguments for the reasons we discuss later in this opinion. We affirm.

The trial court's unchallenged factual findings provide the necessary context to understand this case. STITA is a taxi association created to service the Seattle-Tacoma International Airport. For over 20 years, the Port of Seattle gave STITA an exclusive license to offer taxi rides from the airport. During this time, the Port automatically renewed STITA's license. In 2008, the Port informed STITA that the Port would hold an open bid for the contract to service the airport, instead of automatically renewing STITA's license.

The Port's request for proposal required a fleet of 210 taxi cabs. STITA had a fleet of 160 cabs, so it planned to add another 50 cabs to meet the Port's request. To add these cabs, STITA asked the drivers to join STITA. STITA affirmatively represented to the drivers that the Port would renew its contract as it had in the past and did not tell them that the Port was going to put the contract up for bid.

In March 2009, the drivers agreed to pay $20,000 in initiation fees to join STITA.

STITA eventually lost the bid to another taxi association. After STITA lost its airport contract, the drivers left STITA. When the drivers left STITA, most had paid $10,000 of the required $20,000 in initiation fees.

STITA sued the drivers for breach of contract, seeking to recover the unpaid balances of fees. The drivers pleaded affirmative defenses, and counterclaimed for fraud, negligent misrepresentation, unjust enrichment, and other causes of action. The case proceeded to a bench trial.

The drivers prevailed on certain counterclaims. The court concluded that the drivers had failed to prove fraud in the inducement. But the court also concluded they had proven that STITA was liable for negligent misrepresentation. The court further concluded that unjust enrichment applied. The court rescinded the contracts between the parties and awarded what it characterized as "equitable damages."

STITA appeals.

## NEGLIGENT MISREPRESENTATION

STITA argues that the trial court erred by concluding that STITA was liable for negligent misrepresentation. STITA argues that the court erred in three different ways. First, STITA argues that the drivers failed to prove a necessary element of negligent misrepresentation: damages proximately caused by its misrepresentation. Second, STITA argues that the court found it was liable based on a failure to disclose when it had no duty to disclose. Third, STITA argues that the independent duty doctrine bars the drivers' claims. We hold that none of these arguments are persuasive.

On appeal from a bench trial, this court "determin[es] whether substantial evidence supports the findings of fact and, if so, whether the findings support the

3

conclusions of law."[2] "Unchallenged findings of fact are verities on appeal."[3] In such cases, the question is whether these verities support the conclusions of law. This court reviews de novo the trial court's conclusions of law.[4]

This court may affirm the trial court's decision on any basis established by the pleadings and supported by the record, whether or not it was considered below.[5]

Here, STITA fails to assign error to any of the trial court's factual findings. Accordingly, they are all verities on appeal.

We note from our examination of the record that the trial court prepared its own findings of fact and conclusions of law. The findings are well-documented. They refer, in detail, to the evidence in the record that substantiates the findings of fact.

We also note that STITA, the appellant, did not provide the complete report of proceedings for this bench trial. It appears this was based on its decision to challenge only legal conclusions regarding liability and the court's remedies. Thus, the question before us is whether the trial court's unchallenged findings of fact support the conclusions of law on the limited record before this court.

---

[2] State v. Homan, 181 Wn.2d 102, 105-06, 330 P.3d 182 (2014).

[3] McCleary v. State, 173 Wn.2d 477, 514, 269 P.3d 227 (2012).

[4] Homan, 181 Wn.2d at 106.

[5] LaMon v. Butler, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989).

Washington follows the Restatement (Second) of Torts for the tort of negligent misrepresentation.[6] Under section 552 of the Restatement (Second) of Torts:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.[7]

To establish liability for this tort, a plaintiff must prove six elements:

> (1) the defendant supplied information for the guidance of others in their business transactions that was false, (2) the defendant knew or should have known that the information was supplied to guide the plaintiff in his business transactions, (3) the defendant was negligent in obtaining or communicating the false information, (4) the plaintiff relied on the false information, (5) the plaintiff['s] reliance was reasonable, and (6) the false information proximately caused the plaintiff damages.[8]

*Negligent Misrepresentation Damages*

STITA first argues that the trial court erred by concluding that STITA was liable for negligent misrepresentation because the drivers did not establish the final element of their claim—damages. Specifically, STITA argues that the only damages the trial court found were "benefit of the bargain" damages, which cannot be recovered under the tort of negligent misrepresentation. Accordingly,

---

[6] ESCA Corp. v. KPMG Peat Marwick, 135 Wn.2d 820, 826, 959 P.2d 651 (1998).

[7] RESTATEMENT (SECOND) OF TORTS § 552(1) (1977).

[8] Donatelli v. D.R. Strong Consulting Eng'rs, Inc., 179 Wn.2d 84, 95 n.3, 312 P.3d 620 (2013).

STITA claims that the drivers proved no recoverable damages. We disagree with STITA's characterization of the court's decision.

Under section 552B of the Restatement (Second) of Torts, damages for negligent misrepresentation are limited to "those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is a legal cause."[9] This may include:

> (a) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and

> (b) pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation.[10]

"Recovery of damages for the benefit of the plaintiff's contract with the defendant is specifically *not* allowed under the Restatement."[11] The Restatement (Second) of Torts states: "[T]he damages recoverable for a negligent misrepresentation do not include the benefit of the plaintiff's contract with the defendant."[12]

A comment to this section of the Restatement states:

> The rule stated in this Section applies, as the measure of damages for negligent misrepresentation, the rule of out-of-pocket loss that is stated as to fraudulent misrepresentations in Subsection (1) of § 549. *Comments a to f under § 549 are therefore applicable to this Section, so far as they are pertinent.*[13]

---

[9] RESTATEMENT (SECOND) OF TORTS § 552B(1).

[10] Id.

[11] Janda v. Brier Realty, 97 Wn. App. 45, 50, 984 P.2d 412 (1999) (emphasis added).

[12] RESTATEMENT (SECOND) OF TORTS § 552B(2).

[13] Id. at § 552B cmt. a (emphasis added).

Turning to comment e to section 549, we see that it states alternative remedies for liability for negligent misrepresentation. Among them are rescission together with recovering "any loss . . . in reliance upon the misrepresentation . . . ."[14]

### Rescission and Monetary Awards

As for these two remedies, rescission generally "contemplates restoration of the parties to as near their former position as possible or practical."[15] Each party:

> (a) restores property received from the other, to the extent such restoration is feasible,
>
> (b) accounts for additional benefits obtained at the expense of the other as a result of the transaction and its subsequent avoidance, as necessary to prevent unjust enrichment, and
>
> (c) compensates the other for loss from related expenditure as justice may require.[16]

A party seeking rescission generally does not need to prove damages.[17]

In any event, the scope of damages for a negligent misrepresentation is more limited than for a fraudulent misrepresentation. A plaintiff who enters into a contract based on a fraudulent misrepresentation may recover "damages sufficient to give him the benefit of his contract with the maker."[18] In contrast,

---

[14] Id. at § 549 cmt. e.

[15] Simonson v. Fendell, 101 Wn.2d 88, 93, 675 P.2d 1218 (1984).

[16] RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 54(2) (2011).

[17] Id. at § 54 cmt. f.

[18] RESTATEMENT (SECOND) OF TORTS § 549(2).

"[T]he damages recoverable for a negligent misrepresentation do not include the benefit of the plaintiff's contract with the defendant."[19] There is nothing in the language of these authorities that supports the proposition that money awarded as restitution in connection with the rescission of an agreement is inconsistent with the limited scope of monetary awards based on liability for negligent misrepresentation.

STITA argues that the drivers "were required to show, through clear and convincing evidence, that they suffered a *net* out-of-pocket loss as a result of their contract with STTITA [sic]."[20] According to STITA, the trial court found damages based on a benefit of the bargain theory. STITA is mistaken.

First, careful review of the record shows that the trial court awarded restitution, not benefit of the bargain damages. Accordingly, the awards are not inconsistent with the limitations imposed by section 552B of the Restatement, on which STITA primarily relies for this argument.

Specifically, paragraph 84 of the court's findings and conclusions sets forth the monetary awards that the court made for STITA's negligent misrepresentations. Close examination of these amounts shows that they are not based on the types of damages that are prohibited under a negligent misrepresentation theory. And the colloquy between the court and counsel reaffirms that the court did not award "anything as a dollar amount for that loss of

---

[19] Id. at § 552B(2); accord Janda, 97 Wn. App. at 50.

[20] Brief of Appellant at 22.

opportunity [to benefit under the agreement]."[21] The court was quite specific that it made no such award because it was not provided evidence to do so.

Thus, the amounts the court awarded are properly characterized as restitution: amounts the drivers advanced in reliance on STITA's negligent misrepresentations. STITA fails to provide any persuasive reason why these monetary amounts should be viewed otherwise.

In sum, the court did not exceed the limitations imposed by section 552B in its monetary awards to the drivers in this case. The fact that the court characterized these amounts as "equitable damages," not restitution, is irrelevant to our analysis. The court appears to have based its awards on provisions other than sections 552B and 549 of the Restatement (Second) of Torts. Specifically, the court based its award on sections 164 and 376 of the Restatement (Second) of Contracts. But the trial court's characterization of the awards is not dispositive.

More importantly, we may affirm on any basis supported by the record.[22] We do so here based on the alternative remedies permitted for liability for negligent misrepresentation under the above discussed portions of the Restatement (Second) of Torts.

The court rescinded the contract between the parties. It released the drivers from any obligations under their contract with STITA. It also returned the parties to their former positions. The court returned the initiation fees to the

---

[21] Report of Proceedings (May 31, 2013) at 35.

[22] LaMon, 112 Wn.2d at 200-01.

9

drivers, and awarded them the reliance costs of transferring from other taxi associations to STITA.

The court also accounted for the property that the drivers received from STITA. It reduced the drivers' award by the value of the dispatch equipment (DDS) that the drivers received from STITA.

Based on the record before us, the trial court's monetary awards were proper. It awarded rescission and monetary awards that are properly characterized as restitution. Thus, the court did not award benefit of the bargain damages. Accordingly, the court's award was consistent with the limited scope of negligent misrepresentation damages.

STITA also argues that the court erred by rescinding the parties' contract because the drivers did not promptly seek rescission. This argument is unpersuasive.

"A party ratifies an otherwise voidable contract if, after discovering facts that warrant rescission, the party remains silent or continues to accept the contract's benefits."[23] But "[t]he mere passage of time does not necessarily establish ratification."[24] A plaintiff is not required to seek rescission while the defendant is attempting to correct a deficiency.[25]

---

[23] Kellar v. Estate of Kellar, 172 Wn. App. 562, 584, 291 P.3d 906 (2012), review denied, 178 Wn.2d 1025 (2013).

[24] Ward v. Richards & Rossano, Inc., P.S., 51 Wn. App. 423, 433, 754 P.2d 120 (1988).

[25] Darnell v. Noel, 34 Wn.2d 428, 435, 208 P.2d 1194 (1949).

STITA argues that the drivers waited approximately two years before seeking rescission. According to STITA, the drivers must have been aware that STITA's representation was false no later than December 2009, when the Port awarded the contract to another taxi association. And the drivers did not seek rescission until their second amended answer in December 2011.

But STITA incorrectly applies the law on which it relies. Because STITA continued pursuing the contract with the Port despite the award to another association, the drivers did not ratify their contract with STITA. The drivers were permitted to wait to see if STITA would cure the effect of its misrepresentations before seeking rescission.

After STITA lost the bid, it sued the Port, seeking an injunction. The trial court denied the injunction and this court affirmed. And in August 2010, the supreme court denied review, effectively ending the quest for judicial relief. The Port signed a contract with another taxi association that same month. Before that point, STITA was still attempting to cure the impact of its misrepresentations to the drivers. Thus, the drivers were not required to seek rescission prior to that time.

In this case, the drivers did not "remain[] silent or continue[] to accept the contract's benefits."[26] They left STITA in October 2010, approximately two months after STITA lost the contract to another association, following the supreme court's denial of review in August 2010. In March 2011, seven of the

---

[26] Kellar, 172 Wn. App. at 584.

11

drivers demanded return of their initiation fees. Thus, the drivers acted within a reasonable time.

STITA also argues that the drivers should not have waited until their second amended answer to plead rescission as a remedy. But the drivers' first answer pleaded the underlying facts and requested restitution and reliance damages. In any event, STITA fails to establish any prejudice by the drivers' delay. Thus, this argument is also unpersuasive.

### Failure to Disclose

STITA next argues that the trial court erred by allegedly concluding that STITA was liable for negligent misrepresentation based on a failure to disclose. Specifically, STITA claims that the trial court erroneously concluded that there was an actionable failure to disclose rather than an affirmative misrepresentation. The trial court's unchallenged findings show otherwise.

We reject STITA's argument primarily because it relies on an incomplete characterization of the trial court's decision. In its conclusions of law, the court stated:

> STITA's representations to the drivers that there was a 100% chance STITA's exclusive license at the airport would be automatically renewed just like it had been over the past 20 years *and* their failure to disclose that the license was actually going out for open bid were misrepresentations of existing fact.[27]

Thus, the court concluded that STITA made two types of misrepresentations. One was an affirmative misrepresentation, and the other

---

[27] Clerk's Papers at 618 (emphasis added).

was based on STITA's "failure to disclose that the license was actually going out for open bid."

The unchallenged findings support the conclusion that STITA made affirmative misrepresentations. One unchallenged finding states:

> STITA board members told the drivers at meeting [sic] and individually that STITA had automatically renewed its exclusive license at the airport multiple times over the past couple decades and this time was going to be no different. STITA board members told the drivers they were 100% certain STITA would renew its exclusive license at the airport.[28]

This unchallenged finding of fact supports liability based on affirmative misrepresentations. We need not consider whether a duty to disclose supported another basis for liability.

Thus, the trial court properly concluded that STITA committed negligent misrepresentation based on affirmative statements. We reject STITA's argument, which is based on its incomplete characterization of the court's decision.

### Independent Duty Doctrine

STITA also argues that the independent duty doctrine bars the drivers' negligent misrepresentation claims. We hold that the doctrine does not apply to this case. Thus, it does not bar relief in this case.

The independent duty doctrine, also known as the economic loss rule,[29] governs certain tort claims brought by parties to a contract. Under the doctrine, a

---

[28] Id. at 607.

[29] Eastwood v. Horse Harbor Found., Inc., 170 Wn.2d 380, 394, 241 P.3d 1256 (2010).

party can seek tort remedies only if the other party violates a duty that exists independently of the contract.[30] On the other hand, if the contract creates the duty, the party can seek only contractual remedies, and the independent duty doctrine bars any tort claims.

The independent duty doctrine may bar a claim for negligent misrepresentation under certain circumstances.[31] But parties may also have an independent duty to avoid negligent misrepresentation.[32] "One circumstance where the duty to avoid negligent misrepresentation might arise independently of the contract is where one party, through misrepresentations, induces another to enter into a contractual relationship."[33]

Washington courts narrowly apply the independent duty doctrine. To date, the supreme court has applied the doctrine only to "claims arising out of construction on real property and real property sales."[34] The supreme court has also instructed courts not to expand the independent duty doctrine: "[L]ower courts [should not] apply the doctrine to tort remedies 'unless and until [the supreme] court has, based upon considerations of common sense, justice, policy and precedent, decided otherwise.'"[35]

---

[30] Donatelli, 179 Wn.2d at 92.

[31] Alejandre v. Bull, 159 Wn.2d 674, 686, 153 P.3d 864 (2007).

[32] Donatelli, 179 Wn.2d at 95-96.

[33] Id. at 96.

[34] Elcon Const., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 165, 273 P.3d 965 (2012).

[35] Id. (quoting Eastwood, 170 Wn.2d at 417 (Chambers, J., concurring)).

14

The supreme court has not applied the independent duty doctrine in a situation that does not involve real property or construction. Thus, STITA asks the court to expand the doctrine beyond precedent—something the supreme court has instructed lower courts not to do.[36] Accordingly, we reject this claim.

## UNJUST ENRICHMENT

STITA next argues that trial court erred by applying unjust enrichment. Specifically, STITA argues that the parties have a valid contract, and thus unjust enrichment is improper. The trial court concluded that all of the elements of unjust enrichment were met in this case. But, the only relief that the court awarded was rescission and restitution, as described earlier. This relief was appropriate based on negligent misrepresentation. Accordingly, we do not need to discuss unjust enrichment any further.

## BREACH OF CONTRACT CLAIM

Finally, STITA argues that the prima facie elements of its breach of contract claims are undisputed. STITA argues that if this court reverses the trial court's conclusions on negligent misrepresentation and unjust enrichment, STITA is entitled to judgment on its breach of contract claims. Because we conclude that STITA is liable for negligent misrepresentation and that the court's remedies were proper, we reject this argument.

First, as discussed above, the court correctly rescinded the parties' contract. Second, as the plaintiff, STITA bears the burden of proving all of the

---

[36] Id.

elements of its claim. STITA cannot recover for breach of contract unless it establishes it had a valid contract.

Here, STITA argues that it has a valid contract because "Defendants admit that they signed the contracts, and admit [that they paid less than the full amount of initiation fees]."[37] The mere fact that the drivers signed the documents does not establish that the contract was valid. Because there is no other argument that STITA makes in support of this claim, we reject it.

STITA is not entitled to judgment on its breach of contract claims.

## ATTORNEY FEES

In their briefing, the drivers sought an award of attorney fees on appeal. But they failed to cite any authority or otherwise argue in their briefing why they are entitled to such fees. We acknowledge that on the eve of oral argument of this case the drivers provided supplemental authority explaining their request for fees on appeal.

RAP 18.1(b) provides in relevant part: "The party *must* devote a section of its opening brief to the request for the fees or expenses."[38]

Our case authority makes clear that a mere request for attorney fees is insufficient to fulfill the requirements of RAP 18.1(b).[39] The failure to cite authority for an award disadvantages the opponent. It does so by not providing

---

[37] Brief of Appellant at 38.

[38] (Emphasis added.)

[39] Gardner v. First Heritage Bank, 175 Wn. App. 650, 676-77, 303 P.3d 1065 (2013).

an opportunity for the opponent to respond to the legal authority that purports to support an award.

As this court long ago held in a similar situation:

> Further, although [the appellant] seeks to be awarded his attorney fees on appeal, he has done so without any argument in his brief. RAP 18.1(b) requires more than a bald request for attorney fees on appeal. Where there is any issue whatsoever as to a party's entitlement to attorney fees, the failure to argue the issue requires us to deny the request, at least insofar as the appeal is concerned.[40]

At oral argument of this case, counsel for the drivers candidly described the circumstances surrounding the late specification of the basis for their request for fees on appeal. Counsel also supplied supplemental authority on the eve of oral argument, which identified the basis for the request for fees on appeal.

We commend counsel for his candor to this court. Nevertheless, we decline to waive the requirements of RAP 18.1(b), as discussed in Thweatt v. Hommell, under the circumstances of this case. We decline to award fees on appeal to the drivers.

We affirm the trial court's judgment and deny the drivers' request for attorney fees on appeal.

Cox, J.

WE CONCUR:

---

[40] Thweatt v. Hommel, 67 Wn. App. 135, 147-48, 834 P.2d 1058, review denied, 120 Wn.2d 1016 (1992).